UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:07CR699 CDP |
| | ) | |
| AARON M. HOPGOOD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). After the Defendant filed his motion to suppress, an evidentiary hearing was held on the pretrial motions on January 11, 2008. Subsequently, the original transcript of the matter was filed on January 23, 2008, and the matter fully briefed by the parties on February 13, 2008.

**#13--Motion of Defendant to Suppress Evidence and Statements**

Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Shawn Hedge is a detective with the Rolla, Missouri police department. In March, 2007, he was contacted by Lisa Korobey of the St. Louis police department. Korobey is a member of the Missouri Interstate Task Force on Crimes Against Children. She informed Hedge that she had received a complaint from an individual in Rolla, Missouri, that a person was using a Yahoo messenger e-mail account on the internet to contact a fifteen year-old female. During these contacts, the person had graphic sexual conversations with the female, attempted to meet with the female

personally, and had performed an indecent sexual act for her using a webcam. Korobey said that through the use of administrative subpoenas, she determined that the Yahoo account was registered to Aaron Hopgood, who lived in Rolla, Missouri. With this information, Hedge personally went to the home of the fifteen year-old victim, and talked to the grandmother of the fifteen year old who had made the complaint. He also talked directly to the victim in this matter. The victim told him that a person using the internet name of Shadow_65401 on Yahoo had used the internet to have explicit sexual conversations with the victim in an attempt to meet her. In addition, the victim stated that Shadow_65401 had performed an explicit sexual act for her using his webcam. This sexual act was the act of masturbation. The victim also told Hedge and Det. Rappier that she used several different identities when corresponding with the Defendant, thus raising the possibility that the Defendant was in contact with other minors. After obtaining the consent of the grandmother who owned the computer, Officer Hedge examined the victim's computer in detail.

During this examination, Hedge found chat logs of Shadow_65401, and also found photographs which Shadow_65401 had sent to the victim. Some of these photographs depicted the image of Shadow_65401. When Hedge observed these pictures, he recognized that Shadow_65401 was actually Aaron Hopgood, who he had known for over a long period of time and with whom he had attended school.

Based on the above information, Dean Matthews, an Assistant Prosecuting Attorney for Phelps County, Missouri, filed a complaint before a Judge of the Circuit Court of Phelps County for a search warrant to authorize the search for evidence of sex crimes against a minor. The complaint asked for a warrant to search the premises at 507 Lions Club Drive, Rolla, Missouri, the residence of Aaron Hopgood. The complaint stated that there was evidence of sex crimes against a minor

located at the above address including e-mail and graphic files and written, printed, or electronic files, photographs and graphic images located within the hard drive of a computer, webcam or other photographic devices; electronic data storage devices; computer data storage diskettes or optic discs; and electronic equipment capable of storing, retrieving, and/or assessing data depicting sexual activity of adults, adults with children, or children with children; acts of sexual contact or sexual performance of adults, adults with children, children with children or by themselves; photographs of nude adults, nude children, or nude children and adults; which depicts or is used to depict child pornography or obscene material and are being held and kept in violation and contrary to "... Chapters 566, 568, and 573, RSMo."

As a basis for the above complaint, Assistant Prosecuting Attorney Matthews attached an affidavit of Det. Hedge and incorporated it in the complaint for the search warrant. Hedge's affidavit stated in pertinent part as follows:

Hedge received a complaint that an individual had furnished pornography to a minor child on or about December 9, 2007. This information came from Missouri Task Force Det. Lisa Korobey of the St. Louis police department. She told Hedge that as a part of her duties, she investigates tips provided to a cyber tip hotline about internet crimes against children. She told Hedge that Rebecca Anderson provided the tip to Korobey that her granddaughter, age 15, was having internet chats that consisted of graphic sexual acts and performance of sexual activity online using the resources of Yahoo Instant Messenger. Korobey issued administrative subpoenas in this matter apparently to providers of various internet services, and determined that a person who was contacting a 15 year-old and having explicit conversations with her and performing sexual activity online was Aaron Hopgood, who lives at 507 Lions Club Drive, Rolla, Missouri. After receiving this information, Hedge

3

interviewed the grandmother, Rebecca Anderson and the 15 year-old victim, and the grandmother and the 15 year-old confirmed the above information and told Hedge that the 15 year-old had explicit sexual conversations with an individual and that he had performed explicit sexual acts for her. Further, Hedge told the Judge that he confirmed Hopgood's identity by viewing the webcam image that was captured on Anderson's computer. Both the complaint for the search warrant as well as the incorporated affidavit were sworn to respectively by Assistant Prosecuting Attorney Matthews and Det. Hedge before the Judge. In issuing the warrant to search the premises for the above material, the Judge stated as follows:

> The undersigned Judge finds from said verified complaint and from the evidence that there is probable cause to believe that said evidence of sex crimes against a minor are being so unlawfully held and kept in the place above described.

After obtaining a warrant, the officers went to Hopgood's house to execute the warrant. As they approached the house, they observed the Defendant in the driveway, and approached him and handed him the warrant telling him that they had a warrant to search his house. He appeared to read the warrant, and the officers told him what they were looking for. The Defendant was not placed under arrest, and as soon as the warrant was handed to him, he was fully advised of his Miranda rights by Hedge who read the Defendant his rights from a Miranda form. The Defendant stated that he understood his rights. Hedge asked him where the computer was located, and he told them it was located in the spare bedroom. The agents searched the house pursuant to the warrant, and seized from the southwest corner of the bedroom where the computer was located a Dell computer tower, an Intel webcam, an HP Photosmart, a palm pilot, 54 optic discs, a custom CD container with a web and optic discs, 62 optic discs, 14 floppy discs, and one Zip disc. From another part of the bedroom,

the agents seized a Concord camera. From the master bedroom, the agents seized adult pornography magazines.

During the search, Wayne Rappier who is a sergeant with the Rolla police department had a conversation with the Defendant. Rappier is a school resource officer who has been involved in a number of child victim cases and has received special training in computer forensics, child victim interviews, and interviewing perpetrators. The Defendant was not handcuffed or restrained during this conversation, and the conversation took place after the Defendant was completely advised of his rights and waived his rights. Rappier told the Defendant why they were there, and that they had information that the Defendant had contacted a 15 year-old, and had a graphic sexual conversation with her over the internet, and tried to make arrangements to meet her. He also told the Defendant that they had information that he had masturbated for her using his webcam. The Defendant admitted to Rappier that he did all of this, and then asked Rappier if Rappier felt he should hire an attorney. Rappier said that it would probably be a good idea to consider talking to an attorney but apparently the Defendant, after being advised of this, kept talking to Rappier. Rappier asked the Defendant for his user name and password, and he gave this information to Rappier for his Yahoo account, and also told Rappier about a Hot Mail account that he used. Rappier asked the Defendant if they would find that the Defendant contacted other minor females, and the Defendant stated, "I don't think so." After the search was completed, the agents left the premises and did not arrest the Defendant.

After seizing the above Dell computer, on April 11, 2007, the Prosecuting attorney of Phelps County, Courtney George, filed a complaint to search the Dell computer CPU unit that was seized from the Defendant's home and was at that time being stored at the Rolla police department. The complaint requested authority to search the computer CPU unit for evidence of sex crimes against

5

minors, that being the same material as was stated in the application for the warrant to search the Defendant's house. In support of the complaint, the prosecuting attorney attached the affidavit of Hedge and incorporated it into the complaint. Both the prosecutor and Hedge respectively swore to the complaint and the affidavit personally before the Judge. Hedge's affidavit repeated exactly the same facts contained in the initial affidavit and also stated that the mentioned Dell computer sought to be searched for the evidence of sex crimes against minor was the Dell computer seized from the Defendant's home pursuant to the prior search warrant. Based on the above affidavit and complaint, the Judge issued the warrant to search the Dell computer.

## Conclusions of Law

A. The Search of 507 Lions Club Drive, Rolla, Missouri

Based on the above findings, the undersigned concludes that sufficient probable cause exists to authorize the issuance of the warrant to search the residence of 507 West Lions Club Drive, in Rolla, Missouri. Further, probable cause exists to authorize the seizure from that address and any computer equipment or computer accessories which might reveal evidence of sex crimes against a minor, including a hard drive of a computer, a webcam, or any other photographic or electronic storage devices which would be capable of storing graphic images of sexual performances by the Defendant, or graphic sexual e-mails.

For a search warrant to be valid, it must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967). The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

6

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context--not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." See Illinois v. Gates, at 232. Probable cause may be based on the totality of the circumstances present. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be search. See Illinois v. Gates, supra. Also, affidavits should not be read in a hypertechnical manner. See United States v. Ventresca, 380 U.S. 102 (1965).

Given the above law, the undersigned concludes that the affidavit states sufficient probable cause to search the Defendant's home and to seize Defendant's computer and webcam, and any other equipment or computer accessories which the Defendant has which are capable in any way of storing graphic e-mail communications with the victim of this case or other minors, and any computer equipment or photographic equipment capable of storing graphic sexual performances of the Defendants or others which may have been used in communication with the Defendant or with other minors.

The affidavit in this case, as well as the information available to both officers,[1] showed that the Defendant in this case used a Yahoo internet e-mail account to contact a 15 year-old female, during which he had graphic sexual conversations with the female, attempted to meet the female personally, and performed at least one indecent sexual act for her, that act being the act of masturbation which he recorded by using his webcam, and then transmitted to the minor. Agents discovered during the course of their investigation that the minor female had used several different names while corresponding with the Defendant, thus, leading them to believe that the Defendant may have been in contact with other minor females and indeed asked him about this during questioning. The Defendant was positively identified as the person perpetrating this enticement of the minor female, and providing her with indecent material while having graphic sexual conversations with the minor and attempting to meet with her.

Based on the above facts, the Defendant concedes that "the officer's affidavit, as part of the application for the search warrant, established probable cause to search the Defendant's residence for particular items that were related to the investigation, including the computer and the computer tower, and the webcam." The undersigned agrees with the Defendant that there was ample probable cause shown for the seizure of these items based on the above facts. However, the Defendant's argument that probable cause was not shown for the seizure of any other computer equipment including the optic discs, CDs, and floppy discs must fail. The focus of the affidavit in the search warrant was on the Defendant's apparent sexual exploitation of a minor and enticement of a minor

---

[1] While the undersigned concludes that the affidavit shows probable cause, the undersigned notes that under the good faith standard, the undersigned may consider facts in the affidavit as well as "any information known to the officers, but not presented to the issuing judge." United States v. Guzman, 507 F.3d 681, 685.

by way of sexual conduct in which he engaged with the minor victim over the internet. Based on the detailed information above, the judge authorized law enforcement officers to seize any type of computer equipment which might contain evidence of these crimes against a minor victim. The undersigned concludes that the warrant authorizing the seizure of the CPU unit; the webcam; e-mails and graphic files in written, printed, or electronic form, as well as photographs and graphic images located within the hard drive of the computer, webcam, or other photographic devices; electronic data storage devices; computer data storage diskettes or optic discs; and electronic equipment capable of storing, retrieving or assessing data depicting sexual activity of adults or adults with children, is well within the probable cause stated and not overly broad. Any of these files could have contained photographs of the Defendant or others involved in the performance which he displayed to the victim, or other performances which he may have displayed to other minor individuals. Further, any of these files could have contained other graphic conversations which the Defendant may have had with this victim or with other victims. The undersigned also concludes that the manner in which the Defendant perpetrated this crime against the minor victim indicated a degree of sophistication in which the Defendant was likely to have at his home not just the computer unit and the webcam, but other materials used to store sexually explicit and possibly illegal information. Therefore, the undersigned concludes that the warrant was not overly broad and that it met the particularity requirements of the Fourth Amendment. See Anderson v. Maryland, 427 U.S. 463 (1976) (a warrant may authorize the seizure of an entire class of items if the warrant is sufficient to establish probable cause to support the seizure of the entire class); United States v. Jansen, 470 F.3d 762 (8th Cir. 2006) (the standard used to determine whether a warrant description is specific is one of practical accuracy and the degree of specificity may change according to the circumstances); United States v. Lacy, 119 F.3d 742 (9th Cir.

1997) (a warrant authorizing the seizure of an entire computer system as well as optic discs and all other materials was sufficiently precise because a more precise description of where the child pornography images might be stored was not possible).

### B.  The Search of the Seized Computer Equipment and Discs and the Discovery of the Child Pornography

As stated by the Defendant, the warrant also authorized the search of the computer and the seized discs for child pornography even though the affidavit and the information in possession of the officers did not show probable cause to search for child pornography.  Because the undersigned concludes that regardless of whether probable cause was shown to search for child pornography and whether the particularity requirement of the Fourth Amendment was met in this regard, the good faith exception to the exclusionary rule applies.  Therefore, the Defendant's motion to suppress should be denied.

In <u>United States v. Sage</u>, 2007 WL 4592074 (W.D. Mo. Dec. 27, 2007), a case similar to the one now at bar, officers of the Lee's Summit, Missouri police department learned from a minor child that he had sexual contact with the defendant, on one occasion in the defendant's car and on another occasion in the defendant's home.  Further, the minor told the officers that he had been contacted by the defendant through the use of instant messaging over the internet, and that he had had text communications with the defendant using a cell phone.  Both modes of communication were used by the defendant to set meetings with the victim.  There were no allegations that the defendant was in possession of child pornography on his computer or that there were other victims.  Nevertheless, on the basis of an affidavit showing ample probable cause to search the defendant's computer equipment and cell phone for evidence of sexual exploitation of the minor, the judge issued a warrant to search and seize:

any and all computer component systems, specifically but not limited to a laptop computer. . .any and all electronic and internal media stored within the above computer electronic items, together with all storage devices, internal or external to the computer or computer system.

Pursuant to the above search warrant, the officers searched the defendant's house and seized a computer operating system tower, two flash drives, CDs, an extra hard drive, and two telephones. They searched the computer equipment for contacts between the defendant and the victim and also searched for child pornography because they stated the warrant authorized the search of "any and all" computer and media equipment. In framing the issue presented by the defendant in this case, the Court in Sage stated as follows:

> The crux of the defendant's argument, however, is not so much the removal of those items from his residence, but the officers' looking at everything stored in his computer, including images, when there was no allegation by the victim that any images (such as pornography) were used or discussed during the sex crimes that were being investigated. Because the affidavit does not even mention child pornography, a strong argument can be made that the affidavit does not establish probable cause to search for child pornography. It is clear that the detectives did not merely "run across" the child pornography while searching for evidence of contacts between defendant and DC. Indeed, Detective Casady's Request for Service to the Heart of America Regional Computer Forensic Lab requested examination for any program containing not only communication between the defendant and the victim, but also for any programs containing "child pornography."

Sage, at *7.

The Court resolved this by finding that there was sufficient evidence of good faith by the officers based on the fact that the warrant showed ample probable cause for search of the computer for evidence of sexual exploitation of a minor, that the search warrant affidavit was reviewed by both the prosecuting attorney and the judge, and that the evidence presented at the hearing showed that the search for child pornography was justified by the warrant because child enticement and child pornography go "hand in hand." In addition, the judge found in searching for evidence of contacts

11

between the minor and the defendant, it would be necessary to open files which would reveal child pornography, and, thus, they were found during the normal execution of the search warrant.

While evidence obtained as a result of a defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. See United States v. Leon, 468 U.S. 897, 920, 921 (1984). There are four circumstances which exist in which the Leon good faith exception does not apply. They are as follows:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role;" (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render the official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient . . .that the executing officers can not reasonably presume it to be valid."

United States v. Guzman, 507 F.3d 681, 685 (8th Cir. 2007). See also Leon, 468 U.S. 897 at 923.

Further, in United States v. Grant, 490 F.3d 627 (8th Cir. 2007), the Court stated as follows in dealing with the good faith exception when a computer is searched:

> Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit. . .and we confine our inquiry "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization,". . .

United States v. Grant, 490 F.3d 627, 632, 633 (8th Cir. 2007). See also United States v. Guzman, 507 F.3d 681 (8th Cir. 2007).

Based on the above, the undersigned concludes that the officers relied on the warrant in this case in objective good faith. First, as in Sage, supra, the affidavit underlying the warrant

12

stated (as the Defendant concedes) probable cause to believe that the computer unit, and optic or compact discs contained evidence of enticement of a minor child, the Defendant having graphic sexual conversations with a minor child, and the Defendant conveying pornographic images of himself to a minor child. In addition, the affidavit authorizing the search for the above computer equipment for child pornography was reviewed by an assistant prosecuting attorney who approved the affidavit and search warrant and filed a complaint under oath before a circuit judge affirming the probable cause. The circuit judge then authorized the warrant to search the items. Prior to the search of the computer itself or of the discs, the officers also took the added precaution of applying for a separate warrant to search the computer tower. In doing so, they again sought the advice of the elected prosecuting attorney, who approved the application for the warrant, and again filed a complaint under oath before a second circuit judge who also issued a warrant in this matter. In addition, the individuals conducting the search of the premises of the house were individuals who had interviewed the victim in the case, reviewed the victim's computer, and one of the officers had investigated many child victim cases and had special training in computer forensics and child victim cases. In addition, because the victim had used several pseudonyms in contacting the Defendant, they believed that there could be other victims involved in the case, and questioned the Defendant about this matter.

     Given all of the above, as well as the relation of child pornography to the crimes of enticement and the probable cause shown that evidence of enticement as well as furnishing pornography to a minor would be found on the computer, the undersigned concludes that the good faith exception to the exclusionary rule applies in this case. In addition, there is no evidence

of bad faith in this case.  There were no false statements made to the judge, and there is no evidence that the judge abandoned his judicial capacity in any way.

      The undersigned also concludes that the manner of the execution of the warrant would make it necessary for the agents to open any files containing any images on the computer since the Defendant used images of himself committing indecent acts and conveyed these images to the victim using the computer and webcam.  Therefore, any search of the computer would include a search for graphic sexual conversations between the Defendant and the victim as well as any images that might be stored on the computer.  This being the case, it is likely that an extensive search of the files would have been necessary in order to find the evidence of contacts between the victim and the Defendant particularly considering the manner in which they were accomplished.  See United States v. Sawyer, 799 F.2d 1494, 1509 (11th Cir. 1986) (in some instances searching officers must be able to examine nearly every document possessed by a suspected criminal if only to determine whether the documents contain evidence of criminal activity); United States v. Davis, 226 F.3d 346 (5th Cir. 2000) (warrant using generic categories are adequately particular where it will be necessary to examine most of the documents seized); United States v. Curry, 911 F.2d 72 (8th Cir. 1990) (in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed); United States v. Dickerson, 166 F.3d 667 (4th Cir. 1999) (a warrant which described the items to be seized as evidence associated with bank robberies was sufficient given the fact that the agent executing the warrant had been investigating bank robberies for seven years and, thus, was familiar with the types of evidence to look for in these crimes).

Similarly, when officers come across evidence when executing a valid search warrant which they immediately know to be incriminating but was not detailed in the search warrant, the officers may, nonetheless, seize the property under the "plain view" doctrine. See Horton v. California, 496 U.S. 128 (1990). In so holding the Supreme Court stated as follows:

> An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the court of the search come across some other article of incriminating character.

Horton v. California, 496 U.S. 128, 135.

Similarly, the Eighth Circuit Court of Appeals in Khabeer v. United States, 410 F.3d 477 (8th Cir. 2005), held as follows:

> The Khabeers next argue that the police violated their Fourth Amendment rights by seizing evidence that was not particularly described in the warrant. . .The government responds that the search was authorized by the warrant, and that the evidence was seized in accordance with the plain view exception to the Fourth Amendment's warrant requirement. "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object."
>
> We conclude that the search of the home was proper. The officers had a right to be in the Khabeer residence by virtue of the search warrant. Because the identity card in the name of Mary Ann Dawkins, one of the objects specified in the warrant, is a small object, the officers were authorized to search all areas in the residence that could conceal an identification card. Many of the disputed identification documents and credit card reports, including the Dawkins military identification, were found in a box in the master bedroom closet. The remainder of the identification cards were seized from a box in a utility room. Although the Khabeers argue that the officers should have stopped searching small areas once they found the Dawkins identification card, there was uncontested evidence that the documents in the utility room were found before the discovery of the Dawkins card and other documents in the master bedroom. . .

United States v. Khabeer, 410 F.3d 477, 482.

Given the above law, the undersigned concludes that it is also highly likely that the evidence in this case was found during the part of the search which authorized looking through all of the e-mail files and other graphic files and images for evidence of the crime of enticement of the minor or the crime of providing pornographic material to the minor. Each file would have to be opened in order to determine whether or not it contained an image of the Defendant or others committing the crimes of enticement and providing pornography to a minor. Thus, the undersigned concludes that the child pornography would have been readily apparent upon its viewing the by officers. Therefore, for this separate reason, the search was also lawful.

C. Statement Made by the Defendant

Based on the above findings, the undersigned concludes that the Defendant's statement to the agents was voluntarily made after the Defendant was advised of all his rights, stated that he understood those rights, and waived his rights by agreeing to talk to the officers. Regarding statements made under circumstances such as exist in the present case, the Eighth Circuit Court of Appeals has stated:

> The appropriate test for determining the voluntariness of a confession is "whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will."

United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990).

Further, in commenting on the appropriate test in this situation the Court stated as follows in United States v. Kilgore, 58 F.3d 350 (8th Cir. 1995):

> The appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's "'will [was] overborne and his capacity for self-determination critically impaired.'". . . In making this determination, courts will inquire into the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure.

58 F.3d 350, 353.

In addition, the fact that the Defendant was fully advised of his rights and waived his rights weighs heavily in favor of voluntariness. See Evans v. Dowd, 932 F.2d 739 (8th Cir. 1991).

As to the Defendant's right to counsel at his interrogation, the Miranda right to counsel attaches only when a suspect invokes the right during custodial interrogation by making a clear and unequivocal request for counsel. See Davis v. United States, 512 U.S. 452 (1994). In Davis, the Defendant waived his right to counsel, then during questioning said, "Maybe I should talk to a lawyer." In stating that this was not a request for counsel, the Court stated as follows:

> Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." ...Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet this requisite level of clarity, Edwards does not require that the officers stop questioning the suspect.

Davis, at 459.

The Court went on to state in adopting this rule that they might be disadvantaging some suspects who may not articulately state their desire for counsel, and then went on to state that, however, in considering how a suspect must invoke the right to counsel, the Court will consider the need for effective law enforcement. In this regard the Court stated as follows:

> But if we were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.
>
> Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not

> he actually wants an attorney. . .Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions.

512 U.S. 461, 462.

Further, in situations such as the case now at bar, the Eighth Circuit Court of Appeals has stated:

> An express written or oral statement or waiver by a defendant of his right to remain silent or of the right to legal assistance of counsel, though not conclusive, is "usually strong proof of validity of that waiver."

United States v. Hack, 782 F.2d 862, 866 (8th Cir. 1986).

Given the above law, the undersigned concludes that the Defendant in the case now at bar was fully advised of his rights by having them read to him from a Miranda card, and fully waived those rights stating that he was willing to talk to the officers. In addition, there is really no evidence that the Defendant was in custody in this matter, and the officers did not arrest the Defendant, did not tell him he was under arrest, did not restrain him, and left his premises without arresting him. In addition, no threats or promises were made to the Defendant during the interview. The undersigned also concludes that the Defendant never unequivocally claimed his right to a lawyer, and only asked the agent if he should consult with or hire an attorney. The agent told him that it might be a good idea to consider that, and after this, the Defendant went ahead and talked to the agent further. The Defendant never said he wanted to stop talking or wanted to consult an attorney at that time, even though he had been fully advised of his right to do so. Therefore, the undersigned concludes that given the circumstances in this case, the

Defendant's question to the agent about whether he should consult an attorney was not an invocation of his rights, given the above case law.

Therefore, the undersigned concludes that the Defendant's statement was voluntarily made and should not be suppressed. See Miranda v. Arizona, 384 U.S. 436 (1966).

**Conclusion**

Therefore, the undersigned concludes that the motion of the Defendant to suppress evidence and statements should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion of Defendant to Suppress Evidence and Statements [Doc.#13--dated 12/14/2007] be **denied**.

Further, the parties are advised that they have until **March 29, 2008**, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Finally, the trial of this matter is set on **May 5, 2008 at 8:30 a.m.** before the Honorable Catherine D. Perry, United States District Judge, Courtroom 14-South.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of March, 2008.